UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
DEBORAH COVEAL, FAITH GOODMAN
and ARVILLA GREEN,

                            Plaintiffs,

       -against-

CONSUMER HOME MORTGAGE, INC.,
IDEAL MORTGAGE BANKERS, LTD., d/b/a
LEND AMERICA U.S. MORTGAGE CORP.
d/b/a MORTGAGE CONCEPTS, MICHAEL
ASHLEY, individually and in his capacity as a
substantial shareholder of CONSUMER
HOME MORTGAGE and IDEAL
MORTGAGE BANKERS, LTD., Subsidiaries
of U.S. MORTGAGE CORP., THE
FORECLOSURE NETWORK OF METRO
NEW YORK, INC. d/b/a THE
FORECLOSURE NETWORK, GARY
LEWIS, individually and in his capacity as
substantial shareholder of THE
FORECLOSURE NETWORK OF METRO
NEW YORK INC., KENNETH GOLDEN,
ESQ., RAJESH MADDIWAR, ESQ., M & T
MORTGAGE CORP., CHARLES SALVA
APPRAISALS, INC., and CHARLES
SALVA,

                            Defendants.
-------------------------------------------------------x

MEMORANDUM AND ORDER
04-CV-4755 (ILG)

GLASSER, United States District Judge:


## **INTRODUCTION**

Pending before the Court is a motion filed by various defendants to dismiss the first

amended complaint.  In a memorandum and order dated March 29, 2005 (the "Order"),

familiarity with which is assumed, see Coveal v. Consumer Home Mortgage, Inc., 2005 WL

1

704835 (E.D.N.Y. Mar. 29, 2005), the Court granted in part and denied in part the motion filed

by defendants Michael Ashley ("Ashley"), Kenneth Golden ("Golden"), Consumer Home

Mortgage, Inc. ("CHM"), Ideal Mortgage Bankers, Ltd. d/b/a Lend America a/k/a U.S. Mortgage

Corp. and Mortgage Concepts (collectively, "Lend America") and Rajesh Maddiwan

("Maddiwan") to dismiss the original complaint.  The Court dismissed with prejudice plaintiffs'

claim under the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq., because it was

untimely, and dismissed without prejudice plaintiffs' other federal cause of action, under the

Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et. seq., with leave to replead that

claim.  In part, the Court held as follows:

> At oral argument, and consistent with the statements in their
> opposition papers, plaintiffs argued that they did not become
> aware of the ECOA claims until November 10, 2002, when
> their counsel read a newspaper article about other similar
> lawsuits that had been filed in this Court by African-
> American home buyers who were allegedly the subject
> of a similar predatory lending scheme involving many
> of the same defendants.  If these allegations are true, and
> plaintiffs can assert that they acted with reasonable
> diligence in discovering the alleged wrongdoing, it
> may be appropriate for the Court to invoke the
> fraudulent concealment doctrine to the ECOA claim.

Coveal, 2005 WL 704835, at *7.  Pursuant to 28 U.S.C. § 1367(c), the Court denied the motion

to dismiss the state law claims filed under the New York State Deceptive Practices Act, N.Y.

G.B.L. § 349, the New York State Real Property Law, N.Y. Real. Prop. § 443, and common law

claims for conspiracy to defraud, fraud and breach of fiduciary duty.  Id. at **8-10.

Plaintiffs filed a first amended complaint (the "amended complaint") on April 18, 2005.

The amended complaint asserts the same causes of action as the original complaint except for the

now-dismissed TILA claim.  In the amended complaint, plaintiffs added a section styled

"Fraudulent Concealment" in which they alleged, inter alia, that in the Spring of 2002, they discussed with the law firm representing them in this case "whether an arrangement could be made with M & T to workout the arrears and reduce the monthly mortgage payments." (Am. Compl. ¶ 93). "At that time, Plaintiffs did not have possession or access to the documents which they had signed at the closing." (Id. ¶ 94). Plaintiffs made efforts to contact Rajesh Maddiwar, the attorney who represented them with respect to the purchase of the subject property, but he did not return their calls. (Id. ¶ 95). Attempts to work out a settlement regarding the mortgage payments that were in arrears were unsuccessful, resulting in M & T instituting a foreclosure proceeding in September 2002. (Id. ¶ 96). Plaintiffs did not become aware that they may have been victims of discrimination with respect to the loan transaction until after November 10, 2002, when Newsday "published an article which revealed that persons other than plaintiffs were involved in lawsuits" against some or all of the defendants in this case "in which predatory lending was alleged." (Id. ¶¶ 97, 100). It was only after reading the Newsday article that plaintiffs' counsel conducted an investigation in which they determined that defendants' other purported victims were also African-American. (Id. ¶ 98).

Ashley, Golden, CHM and Lend America, joined by M & T Mortgage Corp. ("M & T"), have filed this motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction over this case pursuant to the Rooker-Feldman doctrine because the plaintiffs litigated (or could have litigated) the very same claims in a foreclosure proceeding instituted by M & T in New York Supreme Court, County of Nassau (the "Foreclosure Proceeding"). In that case, Coveal, Goodman and Green filed a verified answer with affirmative defenses and counterclaims against M & T for fraud, fraud in the inducement, intentional

infliction of emotional distress and perpetration of an "unconscionable predatory lending

scheme." (Declaration of Evelyn H. Seeler executed on June 3, 2005 ("Seeler Decl.") Exh. E ¶¶

41-56). Further, in their fourth affirmative answer, plaintiffs asserted that M & T and its agents

were engaged in "predatory lending" constituting "deceptive practices under section 349 of the

General Business Law of the State of New York." (Id. ¶ 15). Moreover, the loan extended to

plaintiffs was alleged to be a scheme targeted at "minority purchasers." (Id. ¶ 27). The

defendants, other than M & T, have also moved to dismiss the ECOA claim, alleging that

notwithstanding the additional allegations, the amended complaint does not assert a claim for

relief under ECOA.

## DISCUSSION

### I.       Standards Governing the Pending Motions

A motion to dismiss for subject matter jurisdiction under Rule 12(b)(1) is reviewed under

the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Lerner

v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir.), cert. denied, 540 U.S. 1012 (2003).

Specifically, the Court must review the allegations in the light most favorable to plaintiffs, and

draw all reasonable inferences in their favor. Id. Further, the court may consider evidence

beyond the pleadings to resolve disputed issues of fact pertaining to its jurisdiction. See Flores

v. S. Peru Copper Corp., 2003 WL 24049712, at *18 n. 30 (2d Cir. Aug. 29, 2003). A court

presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide

the "jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on

the merits, and therefore, an exercise of jurisdiction." Magee v. Nassau County Med. Ctr., 27 F.

Supp. 2d 154, 158 (E.D.N.Y. 1998).

Fed. R. Civ. P. 12(b)(1) directs the district court to dismiss a complaint when it "lacks

jurisdiction over the subject matter." Federal subject matter jurisdiction exists when a "federal

question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the

plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds

$75,000. See Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). If the

exercise of that jurisdiction would result in the reversal or modification of a state court judgment,

federal district courts lack subject matter jurisdiction, even if there is a predicate for the exercise

of federal jurisdiction. Davis v. City of New York, 2000 WL 1877045, at *3 (S.D.N.Y. Dec. 27,

2000) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). Where jurisdiction is

lacking, the district court must dismiss the complaint notwithstanding the merits. Nowak v.

Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996). The party seeking to

invoke federal jurisdiction carries the burden of proof in establishing that jurisdiction. See

APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).

## II.     Defendants' Argument that the Court Lacks Subject Matter Jurisdiction

In this motion, the moving defendants assert that the Court lacks subject matter

jurisdiction pursuant to the judicially created Rooker-Feldman doctrine. The Rooker-Feldman

doctrine was initially articulated in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and its

principle subsequently re-affirmed in District of Columbia Court of Appeals v. Feldman, 460

U.S. 462 (1983). In sum, the doctrine states that among federal courts, only the United States

Supreme Court maintains subject matter jurisdiction to review state court judgments. See, e.g.,

Santini v. Conn. Hazardous Waste Mgmt. Serv., 342 F.3d 118, 126 (2d Cir. 2003), abrogated on

other grounds by, San Remo Hotel, L.P. v. City and County of San Francisco, 125 S. Ct. 2491

(2005); <u>Thaler v. Casella</u>, 960 F. Supp. 691, 697-98 (S.D.N.Y. 1997) (holding that

Rooker-Feldman "requires that an aggrieved state court litigant must pursue his claims directly

in the state appellate courts and ultimately to the United States Supreme Court."). The Court

thus lacks subject matter jurisdiction over this case "if the exercise of jurisdiction would result in

the reversal or modification of a state court judgment." <u>Hachamovitch v. DeBuono</u>, 159 F.3d

687, 693 (2d Cir. 1998). Therefore, if the identical claims raised in a state court proceeding are

raised in the subsequent federal proceeding, Rooker-Feldman will bar the action.

      The United States Supreme Court confirmed this principle in a decision it decided last

term. It limited the application of Rooker-Feldman to the situation where "the losing party in

state court filed suit in federal court <u>after the state proceedings ended</u>, complaining of an injury

caused by the state-court judgment and seeking review and rejection of that judgment." <u>Exxon

Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 125 S. Ct. 1517, 1526 (2005) (emphasis added). The

Supreme Court clarified that "[w]hen there is parallel state and federal litigation,

Rooker-Feldman is not triggered simply by the entry of judgment in state court." <u>Id.</u> (noting that

in this situation, "[c]omity or abstention doctrines may, in various circumstances, permit or

require the federal court to stay or dismiss the federal action in favor of the state-court

litigation"). The Court further noted that courts often mistakenly apply the Rooker-Feldman

doctrine to situations where the holding rests on the affirmative defense of collateral estoppel or

res judicata – a decision on the merits – not a finding that the Court lacks subject matter

jurisdiction over the action. <u>Id.</u>

      The moving defendants argue that plaintiffs either did litigate, or had the opportunity to

litigate, the same causes of action in the Foreclosure Proceeding as they do in this case. As the

Court noted in its prior opinion:

> The very same plaintiffs, in a sworn pleading filed in a New York
> State Court, revealed their knowledge of the underlying events
> giving rise to this case as far back as 2002. On September 26, 2002,
> M & T Mortgage filed a lawsuit against plaintiffs seeking
> foreclosure of the [subject] property based their failure to make
> the mortgage payments ... In that case, plaintiffs submitted a
> verified amended answer. That pleading, dated December 17, 2002,
> which also asserted counterclaims against M & T Mortgage,
> alleged the very same, or substantially similar, factual allegations
> which are set forth in the complaint in this case. (Verified Answer,
> dated December 17, 2002, ¶¶ 23-40).

Coveal, 2005 WL 704835, at *7.

The pleadings from the Foreclosure Proceeding were not submitted by the parties in their

prior motions, but have now been presented to the Court for the first time. An examination of

the plaintiffs' answer in that proceeding reveals that they asserted counterclaims for fraud (first

counterclaim), fraud in the inducement (second counterclaim), an "illegal, unlawful and

unconscionable predatory lending scheme" (third counterclaim) and intentional infliction of

emotional distress (fourth counterclaim). (Seeler Decl. Exh. E ¶¶ 41-56). Following the filing of

the answer, M & T Mortgage filed a motion pursuant to New York Civil Practice Law and Rules

3212 (the state law equivalent to Fed. R. Civ. P. 56(c)) to, among other things, dismiss the

counterclaims. (Seeler Decl. Exh. F). The Supreme Court of Nassau County granted that motion

in its entirety and dismissed plaintiffs' counterclaims with prejudice. (Id. Exh. H). There is no

suggestion in the record that plaintiffs appealed that judgment. Therefore, there can be no

dispute that plaintiffs' claims in the amended complaint as they are alleged against M & T

Mortgage for conspiracy to commit fraud (first cause of action), willful fraudulent conduct (third

cause of action), and aiding and abetting a "predatory loan," have previously been decided by the

7

state court and thus cannot be relitigated here because the Court lacks subject matter jurisdiction over these causes of action.[1]

"In addition to claims that were actually litigated in state court, the Rooker-Feldman doctrine bars lower federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002); Santini, 342 F.3d at 126 (same). The Second Circuit has ruled that "inextricably intertwined" means, at minimum, "that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ... subsequent litigation of the claim will be barred under the Rooker-Feldman doctrine if it would be barred under the principles of preclusion." Kropelnicki, 290 F.3d at 128 (citing Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996)) (noting that the Rooker-Feldman doctrine is inapplicable only where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings), abrogated on other grounds by, Exxon Mobil Corp., 125 S. Ct. 1517 (2005). These Second Circuit decisions have been abrogated by Exxon Mobil Corp., in which the Supreme Court recently clarified that issue preclusion – collateral estoppel – or claim preclusion – res judicata – does not divest the Court of subject matter jurisdiction under the Rooker-Feldman doctrine, but rather, it is an affirmative defense which may be dispositive to

---

[1]The doctrine of res judicata would bar these claims as well. It precludes parties from relitigating claims that have been adjudicated in a prior action involving the same parties or their privies. Saud v. Bank of New York, 929 F.2d 916, 918 (2d Cir. 1991) (quotation and citations omitted). It applies when the following three elements have been satisfied: (1) identity or privity of the parties to the present and prior actions; (2) identity of the causes of action; and (3) a prior judgment on the merits. NLRB v. United Technologies Corp., 706 F.2d 1254, 1259 (2d Cir. 1983). In the Foreclosure Proceeding, plaintiffs were parties as well as M & T, thus there is an identity of parties. Further, as discussed above, plaintiffs' claims for conspiracy to commit fraud (first cause of action), willful fraudulent conduct (third cause of action), and aiding and abetting a "predatory loan" (eighth cause of action) were decided in the Foreclosure Proceeding on the merits, and thus cannot be raised here again. This requires dismissal of these causes of action based on res judicata grounds.

a resolution of the case.[2]  See Exxon Mobil Corp., 125 S. Ct. at 1526 ("In parallel litigation, a

federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court

judgment, but federal jurisdiction over an action does not terminate automatically on the entry of

judgment in the state court.").

Under federal law, "a federal court must apply the rules of collateral estoppel of the state

in which the prior judgment was rendered." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir.

2000) (citations omitted). Under New York law, for an issue to be subject to collateral estoppel,

1) there must be an identity of issue which has necessarily been decided in the prior action and is

decisive of the present action; and 2) there must have been a full and fair opportunity to contest

the decision now said to be controlling. Schwartz v. Public Administrator of Bronx, 24 N.Y.2d

65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969). Thus, "[c]ollateral estoppel, or

issue preclusion, bars the relitigation of issues actually litigated and decided in the prior

proceeding, as long as that determination was essential to that judgment." Johnston v. Arbitrium

(Cayman Islands) Handels AG, 198 F.3d 342, 346 (2d Cir. 1999) (citation and internal quotation

marks omitted).

As to the first element– whether the issue in the first litigation was necessarily decided,

"it is not necessary that the issue have been 'actually litigated' in the sense that evidence have

been offered on the point." Richardson v. City of New York, 2004 WL 325631, at *2 (S.D.N.Y.

Feb. 20, 2004). "New York requires only that the issue have been properly raised by the

pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id.

---

[2]Defendants are raising the affirmative defense of collateral estoppel in this motion which they filed in lieu
of an answer. Cf. Steinberg v. Columbia Pictures Industries, Inc., 663 F. Supp. 706, 715 (S.D.N.Y. 1987) (holding
that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary
judgment for the first time.") (quotation omitted).

(internal quotation marks and citation omitted) (emphasis added).  In making this determination, the "focus[ ][is] on the rights, questions or facts that underlie a judicial decision; it does not focus on the legal theories underlying the complaint or decision."  Beharry v. M.T.A. New York City Transit Authority, 1999 WL 151671, at *6 (E.D.N.Y. March 17, 1999), aff'd, 242 F.3d 364 (2d Cir. 2000), cert. denied, 531 U.S. 1041 (2001).  "Therefore, subject to certain caveats not relevant here, once a certain set of facts has been determined in a proceeding, those facts cannot be challenged even when a subsequent proceeding attempts to apply a new legal theory to those facts."  Id..

All of the facts giving rise to the amended complaint were presented to the New York State Court, though plaintiffs did not allege all of the same causes of action in the Foreclosure Proceeding as they do in this case.  This difference, however, does not preclude application of the collateral estoppel doctrine, which as discussed above, the Supreme Court has clarified has been mistakenly referred to as the Rooker-Feldman doctrine by courts in the Second Circuit.  See also Zipper v. Todd, 1997 WL 181044, at *3 (S.D.N.Y. Apr. 14, 1997) ("While it is true that plaintiffs never actually raised the federal claims of Section 1983, RICO and SLAPP violations before the state court, Rooker-Feldman precludes district court review of claims 'inextricably intertwined' with state court determinations. The fact that plaintiffs raise new claims under federal statutes does not preclude a finding that they are barred by the Rooker-Feldman doctrine."); Harris v. New York State Dep't of Health, 202 F. Supp. 2d 143, 166-67 (S.D.N.Y. 2002) (barring plaintiff's ADA and Rehabilitation Act claims because they were "integrally connected with the matters decided in the state administrative proceedings" and "implicate[d] the essence of the issue adjudicated by the state court").  Indeed, plaintiffs cannot circumvent

10

application of the collateral estoppel doctrine (expressed by some courts in a discussion of the "Rooker-Feldman" doctrine) by recasting their claims, as they attempt to do through their ECOA cause of action, as a federal civil rights violation.  See Davidson v. Garry, 956 F. Supp. 265, 268-69 (E.D.N.Y. 1996), aff'd, 112 F.3d 503 (2d Cir. 1997); Drew v. Chase Manhattan Bank, N.A., 1998 WL 430549 at *6 (S.D.N.Y. July 30, 1998) (rejecting plaintiff's § 1983 claims that defendants made false representations in court papers as "'merely a thinly-veiled effort to invalidate [a] State Court foreclosure judgment, in contravention of Rooker-Feldman'"); Beckford v. Citibank N.A., 2000 WL 1585684 at **2-4 (S.D.N.Y. Oct. 24, 2000) (plaintiff's claim that defendants violated federal and state law during foreclosure proceedings in Bronx County Supreme Court barred by Rooker-Feldman doctrine).

The fact that plaintiffs' claims in the Foreclosure Proceeding were dismissed in summary fashion is not determinative since collateral estoppel applies to virtually all types of judgments. See, e.g., Ackermann v. Doyle, 43 F. Supp. 2d 265, 272 (E.D.N.Y. 1999).  In addition, as the Supreme Court noted in Rooker, even if the state court was wrong, the judgment is an effective and conclusive adjudication until modified or reversed in the appropriate appellate proceeding. Rooker, 263 U.S. at 415.

Finally, the fact that all of the defendants other than M & T were not parties to the Foreclosure Proceeding does not bar the use of collateral estoppel.  Under non-mutual collateral estoppel, if parties, as plaintiffs here, have had an opportunity to fully and fairly litigate issues and lost, then third parties unrelated to the original action can bar the litigant from relitigating those same issues in a subsequent suit.  See United States v. Ustica, 847 F.2d 42, 49 n. 14 (2d Cir. 1988); see also ACLI Government Securities, Inc. v. Rhoades, 963 F.2d 530, 533 (2d Cir.

1992) (citing <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322, 326-31 (1979) (the doctrine of mutuality, at least for defensive use of collateral estoppel, no longer applies).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court grants defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:       Brooklyn, New York
            October 21, 2005


S/ _____
    I. Leo Glasser